[ECF No. 40]

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

DRIVE NEW JERSEY INSURANCE
COMPANY,

                    Plaintiff,

        v.

CONAWAY RACING & TRUCKING,
LLC, et al.,

                    Defendants.

Civil No. 23-337 (KMW/EAP)

**OPINION**

This matter comes before the Court on Plaintiff Drive New Jersey Insurance Company's ("Drive New Jersey") Motion to Reinstate Matter to Active Docket, ECF No. 40 (Pl.'s Mot.). Defendant Jacob Yoder has opposed the Motion. ECF No. 41 (Def.'s Opp.). Defendants Conaway Racing & Trucking, LLC ("Conaway") and Aaron Pacheco (collectively, the "Conaway Defendants") have taken no position on the Motion. Plaintiff filed a reply brief in support of its Motion. ECF No. 42 (Pl.'s Reply). The Court has reviewed the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1. For the following reasons, the motion is **GRANTED**.

**FACTUAL BACKGROUND**

The present matter arises from a motor vehicle accident, which occurred at approximately 6:45 a.m., on October 2, 2020, at the intersection of Peninsula Drive and State Road 272 in Cecil County, Maryland. ECF No. 20 (Am. Compl.) ¶¶ 9, 11. Defendant Jacob Yoder was driving a 1994 Ford Bronco when he collided with a 2001 Mack tractor and attached 2006 Pratt trailer

operated by Defendant Aaron Pacheco. *Id.* ¶ 10. Plaintiff alleges that, at all times relevant to this action, Defendant Conaway owned the 2001 Mack tractor and the Pratt trailer. *Id.* ¶¶ 19, 21.

On July 29, 2022, Yoder filed a complaint in the Pennsylvania Court of Common Pleas. *See Yoder v. Conaway Racing & Trucking LLC, et al.*, Civ. A. No. 23-1365 (D. Md.), at ECF No. 1 (Notice of Removal) ¶ 2. On September 23, 2022, the defendants in that matter removed the case to the United States District Court for the Eastern District of Pennsylvania. *Id.* The Eastern District of Pennsylvania then transferred the case, pursuant to 28 U.S.C. § 1404(a), to the United States District Court for the District of Maryland, Civil Action No. 23-1365-LKG (the "Maryland Action"). *Yoder*, Civ. A. No. 23-1365 (D. Md.), at ECF No. 33. In a subsequently filed amended complaint, Yoder and his parents, as his guardians, alleged in part that Defendant Pacheco was negligent in his operation of the tractor trailer and that Defendant Conaway was negligent in its hiring and supervision of Pacheco. *Yoder*, Civ. A. No. 23-1365 (D. Md.), at ECF No. 52 (Am. Compl.).

Plaintiff Drive New Jersey filed the current declaratory judgment action in this Court on January 20, 2023, naming Conaway, Pacheco, and Yoder as Defendants. ECF No. 1 (Compl.). According to the Amended Complaint, filed on January 5, 2024, Plaintiff issued commercial auto policy number 01975583-0 (the "Drive New Jersey policy") to Conaway, which remained in effect at all times relevant to the present action. Am. Compl. ¶ 14. Plaintiff alleges that "[t]he Drive New Jersey policy limits liability coverage to damages, other than punitive or exemplary damages, for which an insured is legally liable because of an 'accident' which arises out of the ownership, maintenance or use of an 'insured auto.'" *Id.* ¶ 15. Plaintiff further notes that under the policy, "a vehicle must be scheduled at inception as an 'insured auto' or be added to the policy within 30 days of its acquisition to be scheduled as an 'insured auto' and thus covered under the policy." *Id.*

¶ 16.  Plaintiff asserts that Conaway did not schedule either the 2001 Mack or the Pratt trailer at policy inception, even though Conaway owned and acquired the 2001 Mack and the Pratt trailer more than thirty days prior to the date of the accident.  *Id.* ¶¶ 17-22.  As a result, Plaintiff alleges that neither the 2001 Mack nor the Pratt trailer qualified as an "insured auto" under the Drive New Jersey policy at the time of the accident.  *Id.* ¶¶ 23-24.

According to the Amended Complaint, on October 2, 2020, at 8:30 a.m.—just after the relevant accident—Conaway called Herbert M. Ovner and Associates insurance brokers and requested that the 2001 Mack be added to the Drive New Jersey policy as an insured auto.  *Id.* ¶ 25.  As a result of that request, the brokers prospectively added the 2001 Mack to the Drive New Jersey policy.  *Id.* ¶ 26.  The Amended Complaint alleges that, "[t]he amended policy declarations adding the 2001 Mack to the Drive New Jersey policy expressly state that the addition would not be effective prior to the time at which the change was requested, meaning the change did not have retroactive effect."  *Id.* ¶ 27.  On this basis, Plaintiff seeks a declaratory judgment that it has "no obligation to defend or indemnify any person against any liability for damages in the [Maryland Action]."

Plaintiff further seeks a declaratory judgment on the ground that Conaway was a federally certified for-hire motor carrier of property, and as such, Plaintiff certified the Drive New Jersey policy to the United States Department of Transportation ("USDOT") with an attached MCS-90 Endorsement[1] to the Conaway policy as proof of financial security, as required under 49 C.F.R. §

---

[1]  An MCS-90 endorsement "establishes the minimum levels of financial responsibility required of companies in the business of transporting property in 'interstate or foreign commerce.'"  *Canal Ins. Co. v. Paul Cox Trucking*, No. 05-2194, 2006 WL 2828755, at *3 n.12 (M.D. Pa. Oct. 2, 2006).  "Its purpose is to ensure that a financially responsible party will be available to compensate innocent third parties injured in accidents with trucks owned by such companies."  *Id.* (citing *Md. Cas. Co. v. City Delivery Serv., Inc.*, 817 F. Supp. 525, 530 (M.D. Pa. 1993)).

387.1, *et seq.  Id.* ¶¶ 29-30.[2]  Pursuant to that certification to the USDOT, Plaintiff agreed to pay any final judgment up to $750,000 recovered against Conaway for public liability resulting from negligence in the operation, maintenance, or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980, regardless of whether each motor vehicle is specifically described in the policy.  *Id.* ¶ 31.  According to the Amended Complaint, however, the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 do not apply to the transportation of non-hazardous cargo between points within the same state.  *Id.* ¶ 32.  The Amended Complaint asserts that, at the time of the accident, Pacheco was transporting non-hazardous cargo between two points located entirely within the State of Maryland, meaning that the MCS-90 endorsement attached to the Drive New Jersey policy has no applicability to the loss and could not be triggered by any judgment for public liability arising out of the accident.  *Id.* ¶¶ 33-34.

On June 4, 2024, Plaintiff and Defendants made a joint oral application to the Court to stay discovery in this matter to participate in the mediation scheduled to occur in the Maryland Action, from which the declaratory judgment action arises.  ECF No. 27.  The Court stayed discovery, ECF No. 29, and subsequently administratively terminated this action pending the outcome of a settlement conference scheduled in the Maryland Action.  ECF No. 31.  After unsuccessful efforts to settle the Maryland Action, Plaintiff requested that the Court reinstate the current declaratory judgment action to the active docket.  ECF No. 32.  Following a June 10, 2025 status conference, at which time the parties disagreed about whether the case should be reopened, the Court set a briefing schedule for Plaintiff's motion to reopen.  ECF No. 39.  Plaintiff then filed its Motion on

---

[2]  The Amended Complaint actually cites to 4a U.S.C. § 387.1 *et seq.  Id.* ¶ 30.  The Court presumes that Plaintiff intended to cite to 49 U.S.C. § 387.1.

August 4, 2025, Pl.'s Mot.; Defendant Yoder responded on August 7, 2025,[3] Def.'s Opp.; and Plaintiff submitted a reply on August 11, 2025, Pl.'s Reply.  This matter is now ripe for resolution.

## STANDARD OF REVIEW

"Federal courts have inherent power to control their dockets by staying proceedings." *MEI, Inc. v. JCM Am. Corp.*, No. 09-351, 2009 WL 3335866, at \*4 (D.N.J. Oct. 15, 2009) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1946); *Clinton v. Jones*, 520 U.S. 681, 706-07 (1997); *Bechtel Corp. v. Local 215, Laborers' Int'l Union of N. Am.*, 544 F.2d 1207, 1215 (3d Cir. 1976)) (further citations omitted).  "A stay is particularly appropriate, and within the court's 'sound discretion,' where the outcome of another case may 'substantially affect' or 'be dispositive of the issues' in a case pending before a district court." *Id.* (quoting *Bechtel Corp.*, 544 F.2d at 1215).  "This is especially true where the other case is proceeding in another federal court." *Id.* (citations omitted).

Nonetheless, a discretionary stay must be "kept within the bounds of moderation." *Landis*, 299 U.S. at 256.  To remain within the realm of moderation, a district court should limit the scope and potential duration of the stay and should articulate sufficient reasons for the stay. *MEI, Inc.*, 2009 WL 3335866, at \*5 (citing *Ortega Trujillo v. Conover & Co. Commc'ns, Inc.*, 221 F.3d 1262, 1265 (11th Cir. 2000)).  These articulated reasons may include the interests of justice and judicial economy, the avoidance of inconsistent results, the desire to eliminate duplication of efforts, and the conservation of judicial resources. *Id.* (quoting *Miccosukee Tribe of Indians v. S. Fla. Water Mgmt. Dist.*, No. 98-6056, slip op. at 6 (S.D. Fla. Mar. 28, 2007)).

---

[3]   Although the Court's briefing schedule required Plaintiff to file its Motion by July 18, 2025, ECF No. 39, Plaintiff did not file the Motion until August 4, 2025.  *See* ECF No. 40.  Plaintiff explained that "due to a docketing error," it confused the date for the opposition brief with the date for filing.  ECF No. 40 at 1 n.1.  Because Defendants did not object to the untimely filing, and because the Court can glean no prejudice resulting from the late filing, the Court accepts Plaintiff's brief as timely filed *nunc pro tunc*.

**DISCUSSION**

Plaintiff seeks reinstatement of this declaratory judgment action following the failure of mediation in the underlying Maryland Action. Pl.'s Mot. at 1. Plaintiff, who is not a party to the Maryland Action but nonetheless participated in the mediation, contends that it is now entitled to an adjudication as to its obligation to defend and/or indemnify Conaway with respect to claims against it, for which Conaway has sought coverage from Plaintiff. *Id.* at 3. Plaintiff contends that it owes no coverage under the policy issued to Conaway and that Conaway "surreptitiously sought coverage by attempting to add the vehicle involved in the underlying accident to the Conaway insurance policy issued by Drive New Jersey[.]" *Id.* According to Plaintiff, if it prevails, it will not fund Conaway's defense in the Maryland Action, and Conaway will be required to pay any judgments entered against it. *Id.* In turn, an adjudication here will conclusively establish the rights of the parties and will not be impacted by the underlying tort litigation in the District of Maryland. *Id.* at 4-5.

Yoder responds that a continued stay is necessary "to avoid conflicting rulings, to avoid duplicative litigation, and for judicial economy." Def.'s Opp. at 1. He claims that "[r]elevant to Drive New Jersey Insurance's request to reinstate the above matter, [Plaintiff] argues that Conaway Racing & Trucking, LLC and its driver, Aaron Pacheco, are not covered under the policy of insurance issued by it." *Id.* at 2. Yoder asserts that this issue "is one of the main issues in the third-party case pending in the United States District Court for the District of Maryland." *Id.*

These arguments between the parties raise two separate issues for the Court's resolution: (1) ripeness, and (2) the propriety of a continued stay. The Court addresses each issue individually.

**A.**     <u>Ripeness</u>

"The issue of ripeness is of particular concern in declaratory judgment actions between an insurer and an insured where, as here, an underlying tort action is simultaneously pending." *Evanston Ins. Co. v. Layne Thomas Builders*, 635 F. Supp. 2d 348, 352 (D. Del. 2009) (citing 16 *Couch on Insurance 3d* § 227:37 (2000)); *see also Excelsior Ins. Co. v. Selective Ins. Co. of Am.*, 696 F. Supp. 3d 15, 31-32 (D.N.J. 2023).  In general, an insurer's declaratory judgment action regarding its duty to defend an insured is ripe notwithstanding that liability is not yet definitively established in the underlying suit.  *Evanston Ins. Co.*, 635 F. Supp. 2d at 353 (citing *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 650 (3d Cir. 1990)); *see also Excelsior Ins. Co.*, 696 F. Supp. 3d at 28 ("It is well established under New Jersey law that the duty to defend comes into being when the relevant complaint states a claim constituting a risk insured against." (cleaned up)); *The Home Ins. Co. v. Powell*, No. 95-6305, 1996 WL 269496, at *5 (E.D. Pa. May 20, 1996) (recognizing the Third Circuit's holding that "a controversy regarding the duty of an insurer to defend is ripe for declaratory judgment purposes even if liability has not been established in the underlying suit"), *aff'd* 156 F.3d 1224 (3d Cir. 1998).

With respect to an insurer's duty to indemnify its insured, courts generally refrain from adjudicating that issue until after the insured is found liable for damages in an underlying action. *Evanston Ins. Co.*, 635 F. Supp. 2d at 353 (citing 16 *Couch on Insurance 3d* § 227:38).  "The rationale . . . is that while the underlying case remains pending the question of indemnification has not ripened into a controversy between the parties and "'thus, does not meet the Constitutional requirement that federal courts may only adjudicate actual cases or controversies." *Excelsior Ins. Co.*, 696 F. Supp. 3d at 32 (cleaned up).  "In this circuit, the ripeness of a declaratory judgment action is assessed by considering '(1) the adversity of the parties' interests; (2) the probable

7

conclusiveness of a judgment; and (3) the practical utility of judgment to the parties.'" *Id.* (quoting *Evanston*, 635 F. Supp. 2d at 352 (citing *Step-Saver*, 912 F.2d at 647)).

Here, the Court finds that Plaintiff and Defendants have adverse legal interests because, according to the Amended Complaint, Conaway has already sought coverage from Plaintiff by attempting to "surreptitiously" add the vehicle involved in the underlying accident to the policy issued by Plaintiff, thus attempting to establish coverage for the vehicle. Pl.'s Mot. at 3.  Plaintiff has "indicated that it will deny coverage for the subject accident because the vehicle was not scheduled under the Drive New Jersey policy at the time of the loss." *Id.*  Such assertions sufficiently establish adversity of interest between the parties for purposes of a declaratory judgment action. *Parker McCay, P.A. v. Hartford Fire Ins. Co.*, No. 12-2971, 2012 WL 5258956, at \*2 (D.N.J. Oct. 23, 2012) (holding that a complaint's allegations that (1) an insured requested coverage and (2) an insurer indicated that it would not indemnify the insured are "sufficient to show adversity of the interest of the parties for the purposes of a declaratory judgment action.").

As to the probable conclusiveness of the judgment, "the Court must 'determine whether judicial action at the present time would amount to more than an advisory opinion based on a hypothetical set of facts.'" *Id.* (quoting *Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operating Eng'rs, Local Union No. 66*, 580 F.3d 185, 190 (3d Cir. 2009)).  "'Declaratory suits to determine the scope of insurance coverage have often been brought independently of the underlying claims albeit the exact sums to which the insurer may be liable to indemnify depend on the outcome of the underlying suits.'" *Id.* (quoting *ACandS, Inc. v. Aetna Cas. & Sur. Co.*, 666 F.2d 819, 823 (3d Cir. 1981)).  Here, the declaratory judgment will conclusively establish (1) whether Plaintiff is obligated to defend Conaway, and (2) who, if anyone, must indemnify Conaway for any potential judgment in favor of Yoder in the Maryland Action.

Finally, as to the practical utility of a declaratory judgment to the parties, "determining [Conaway's] insurance coverage is practical and useful, since at the end of the declaratory judgment action, [Conaway] will know whether or not it can rely on [Plaintiff] for indemnification in the [Maryland Action]." *Id.; see also Selective Ins. Co. of Se. v. Food Mktg. Merch., Inc.*, No. 13-193, 2013 WL 2149686, at *4 (D.N.J. May 16, 2013) (finding the declaratory judgment action as to duty to indemnify was ripe for resolution even though underlying tort suit remained unresolved because it would determine the respective interests and obligations of the insured and insurers).

Given the parties' adverse interests and the usefulness of resolving Plaintiff's coverage, indemnification, and defense obligations, the Court finds that the declaratory judgment action is ripe.

**B.    <u>Discretionary Authority</u>**

Having resolved the ripeness inquiry, the Court confronts the more discretionary question of whether to lift the previous, jointly agreed-upon stay of the declaratory judgment action and allow it to proceed despite the pendency of the Maryland Action.

The Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201 and 2202, provides that a court "may declare the rights . . . of any interested party," 28 U.S.C. § 2201(a), and "contemplates that district courts will exercise discretion in determining whether to entertain such actions." *State Auto Ins. Cos. v. Summy*, 234 F.3d 131, 133 (3d Cir. 2000). "As such, a district court is authorized, in the sound exercise of its discretion, to stay or dismiss an action seeking a declaratory judgement [sic]." *Evanston Ins. Co.*, 635 F. Supp. 2d at 354 (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995)).

The United States Supreme Court, however, has cautioned against use of a declaratory judgment action where a parallel state case is proceeding:

> Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided.

*Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942). The Supreme Court identified several factors for district judges to consider in deciding whether to hear a declaratory judgment, including "whether the questions in controversy between the parties to the federal suit, and which [were] not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court;" the scope of the state court proceeding; the nature of the defenses available there; and whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding. *Id.* at 495.[4]

Applying *Brillhart* and its progeny, the United States Court of Appeals for the Third Circuit in *Reifer v. Westport Insurance Corporation*, 751 F.3d 129 (3d Cir. 2014), observed that "[t]he insurance coverage context has been particularly fertile ground for exercising—and testing the boundaries of—DJA discretion . . . ." *Id.* at 141 (footnote omitted). The Third Circuit echoed its previous finding that "the proper relationship between federal and state courts requires district courts to 'step back' and permit state courts to resolve unsettled state law matters." *Id.* (quoting *Summy*, 234 F.3d at 136). Nonetheless, it noted that "'the mere existence of a related state court

---

[4]    While *Brillhart* generally applies to a court's decision as to whether to exercise jurisdiction over a declaratory judgment action—in contrast to the question here of whether to stay a declaratory judgment action pending resolution of a related court action—the same analysis provides useful guidance on the decision to stay a litigation. *See, e.g., Evanston Ins. Co.*, 635 F. Supp. 2d at 355 (considering the *Brillhart* factors in determining whether to dismiss *or stay* the declaratory judgment action pending resolution of an underlying tort action).

proceeding' does not require a district court to decline to exercise jurisdiction under the DJA." *Id.* (quoting *United States v. Pa., Dept. of Envt'l Res.*, 923 F.2d 1071, 1075 (3d Cir. 1991) (further citations omitted)). Rather, the Court outlined a two-part analysis for making this determination. *Id.* at 144-47. First, a district court should consider whether there is a pending parallel state proceeding. *Id.* at 143. "'[T]he absence of pending parallel state proceedings militates significantly in favor of exercising jurisdiction, although it alone does not require such an exercise.'" *Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 282 (3d Cir. 2017) (quoting *Reifer*, 751 F.3d at 144). "[I]f a state parallel proceeding does not exist, then 'as part of exercising sound and reasoned discretion, district courts declining jurisdiction should be rigorous in ensuring themselves that the lack of pending parallel state proceedings is outweighed by opposing factors.'" *Id.* (quoting *Reifer*, 751 F.3d at 144). These factors include the following:

> (1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;
> (2) the convenience of the parties;
> (3) the public interest in settlement of the uncertainty of obligation;
> (4) the availability and relative convenience of other remedies;
> (5) a general policy of restraint when the same issues are pending in a state court;
> (6) avoidance of duplicative litigation;
> (7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for *res judicata*; and
> (8) (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

*Reifer*, 751 F.3d at 146.

Applying the *Reifer* test here, the Court first considers whether a parallel state proceeding exists. A "parallel state proceeding is a pending matter 'involving the same parties and presenting [the] opportunity for ventilation of the same state law issues.'" *Kelly*, 868 F.3d at 284 (quoting

11

*Wilton*, 515 U.S. at 283); *see also Colony Ins. Co. v. Troensa Constr., Inc.*, No. 17-3577, 2018 WL 4676038, at *7 (D.N.J. Sept. 28, 2018) (considering the existence of parallel proceedings as an initial factor). "Germane factors include the scope of the state court proceeding, the claims and defenses asserted, and whether necessary parties [have] been or could be joined." *Kelly*, 868 F.3d at 284. "Such analysis contemplates comparing the state and federal action as they contemporaneously exist, not as they might eventually be." *Id.* Indeed, "the mere potential or possibility that two proceedings will resolve related claims between the same parties is not sufficient to make those proceedings parallel; rather, there must be a substantial similarity in issues and parties between contemporaneously pending proceedings." *Id.* at 283-84 (footnote omitted). "[S]ubstantial similarity" means "that the parties involved are closely related and that the resolution of an issue in one [case] will necessarily settle the matter in the other." *Id.* at 284 n.8. There is "a *per se* presumption that an insurer's declaratory judgment action is distinct from underlying tort actions in state court where the insurer is a non-party." *Colony Ins. Co.*, 2018 WL 4676038, at *7 (citing *Kelly*, 868 F.3d at 287).

Here, no parallel state proceedings exist. Primarily, the Maryland Action is pending in federal court, not state court, making it questionable whether the *Reifer* principles even apply. More importantly, however, Plaintiff is not a party to the Maryland Action, leaving it unable to assert any claims or defenses or otherwise advocate its position in the Maryland Action. Given that fact, the Court applies a *per se* presumption that this declaratory judgment action remains distinct from the underlying tort claims in the Maryland Action. *See Colony Ins. Co.*, 2018 WL 4676038, at *7. This absence of pending parallel state proceedings "militates significantly" in favor of lifting the stay on these proceedings. *Kelly*, 868 F.3d at 282 (quotation omitted).

Cognizant that this determination alone does not control, the Court turns to the remaining *Reifer* factors. The first *Reifer* factor considers whether "a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy[.]" *Reifer*, 751 F.3d at 146. "[Q]uestions of whether Plaintiff has a duty to indemnify and defend [Conaway] are distinct issues that are separate and apart from whether the named defendants in the [Maryland Action] are liable for [Yoder's] personal injuries." *Atain Specialty Ins. Co. v. Da Silva*, No. 20-13080, 2021 WL 2660307, at *4 (D.N.J. June 29, 2021). To the extent the Maryland Action raises issues of insurance coverage, it remains focused on whether the Certificates of Insurance—produced in that matter to substantiate that insurance existed—are fraudulent. *See generally Yoder*, Civ. A. No. 23-1365 (D. Md.), at ECF Nos. 123-1, 125, 126, 129, 135. On February 25, 2026, the Maryland District Court determined that the Certificates of Insurance are in fact fraudulent. *Id.* at ECF No. 165. On March 10, 2026, the court then granted in part and denied in part the defendants' motion for summary judgment, leaving only Yoder's claims for negligent hiring and retention and negligent entrustment. *Id.* at ECF No. 166. Here, by contrast, Plaintiff seeks a declaration that Conaway did not have coverage for a specific vehicle and/or driver under the relevant policy issued—an issue that has not been resolved by the foregoing rulings and will not be resolved in any subsequent trial in the Maryland Action. *See* Am. Compl. ¶¶ 13-28. In other words, as noted by Plaintiff, "deciding whether or not a certificate of insurance is authentic <u>cannot resolve</u> the distinct question of whether the relevant Drive New Jersey policy issued to Conaway afforded any coverage in respect of the underlying auto accident." Pl.'s Reply at 3 (emphasis in original). A declaration from this Court that Conaway does not have coverage under the insurance policy, however, would resolve the uncertainty of Plaintiff's obligation to Conaway. *See Kelly*, 868 F.3d at 288 (concluding that "[d]eclaratory relief by the District Court would unquestionably clarify

13

and settle the dispute regarding" the extent of the insurer's "obligations under the insurance policy"). Accordingly, the first *Reifer* factor weighs against a stay.

The second *Reifer* factor considers "the convenience of the parties[.]" *Reifer*, 751 F.3d at 146. Although Plaintiff is a citizen of the State of Ohio, *see* Am. Compl. ¶ 1, Plaintiff elected to file this declaratory judgment action here and "cannot be inconvenienced by litigating this case in the forum of its choosing." *Westfield Ins. Co. v. Arnold*, No. 23-784, 2023 WL 4977765, at *4 (M.D. Pa. Aug. 3, 2023). Conaway is a citizen of New Jersey, Pacheco is a citizen of New Jersey, and Yoder is a citizen of Pennsylvania, which is a neighboring state. Am. Compl. ¶¶ 2-4. Therefore, the convenience of the parties weighs against a stay.

The third *Reifer* factor considers the "public interest in settlement of the uncertainty of obligation." *Reifer*, 751 F.3d at 146. Because the interpretation of Conaway's policy does not "appear to turn on any unsettled question of state law or important policy issue implicated by the coverage claims[,] . . . . there is little reason for a federal court to be reluctant about deciding this case." *Admiral Ins. Co. v. Sap Transloading, LLC*, No. 21-10392, 2022 WL 3025973, at *3 (D.N.J. Aug. 1, 2022); *see also IDT Corp. v. Krill*, No. 13-1540, 2013 WL 5937421, at *5 (D.N.J. Nov. 4, 2013) (finding public interest not implicated where no public policy concerns were at issue and no "novel or complex issues of state law necessitate[ed] state court adjudication"). Thus, this factor "weighs neither for nor against a resolution in federal court," rendering this factor neutral. *See Scottsdale Ins. Co. v. RSE Inc.*, 303 F.R.D. 234, 240 (E.D. Pa. 2014).

The fourth factor considers the availability and relative convenience of other remedies. *Reifer*, 751 F.3d at 146. As noted above, Plaintiff is not a party to the Maryland Action. "'Because this action already exists, it is arguably more convenient for the parties to litigate their insurance coverage dispute in this federal forum, rather than start anew in state court.'" *Atain Specialty Ins.*,

14

2021 WL 2660307, at *5  (quoting *Nationwide Prop. & Cas. Ins. Co. v. Zatyko*, No. 16-1010, 2016 WL 6804436, at *4 (E.D. Pa. Nov. 16, 2016)).  Thus, this factor weighs slightly in favor of lifting the stay.

The fifth and sixth factors consider the federal courts' general policy of restraint when the same issues are pending in a state court and their interest in avoiding duplicative litigation.  *Reifer*, 751 F.3d at 146. Here, the Maryland Action will not resolve Plaintiff's defense and coverage obligations to Conaway under the insurance policy, meaning that these proceedings do not share the same legal issues.  Regardless of the outcome of the Maryland Action, Plaintiff and Conaway will have to litigate the coverage issues separately.  Therefore, these factors weigh in favor of lifting the stay.

The seventh factor examines whether the declaratory action is being improperly used as "procedural fencing, or as a means to provide another forum in a race for *res judicata*."  *Id.* Because there is no parallel action, this factor does not apply.

Finally, the eighth factor, applicable specifically in the insurance context, considers an "inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion[.]" *Id*.  That factor does not bear on the present case for several reasons.  Primarily, although each case stems from the same set of facts, Plaintiff is not a party to the Maryland Action, having declined a duty to defend.  Moreover, Plaintiff's claim here raises a distinct legal question regarding the existence of coverage and does not require this Court to pass judgment on the underlying issue of Conaway's potential negligence to Yoder.  Accordingly, the eighth *Reifer* factor weighs in favor of lifting the stay of this action.

**CONCLUSION**

Guided by the foregoing analysis, the Court finds that no other factors warrant a continuation of the stay in this case.  Although federal courts have the inherent power to control their dockets by staying proceedings, none of the considerations typically warranting a stay weigh in favor of maintaining the stay here.  *MEI, Inc.*, 2009 WL 3335866, at *5 (quotations omitted). Accordingly, for the foregoing reasons, Plaintiff's Motion to Reinstate this case to the active docket is **GRANTED.**

An appropriate Order follows.

s/Elizabeth A. Pascal
ELIZABETH A. PASCAL
United States Magistrate Judge

cc:  Karen M. Williams, U.S.D.J.